UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BOLO MOUSSA SOW,

        Petitioner,               Case No. 1:25-cv-1816

v.                                 Honorable Paul L. Maloney

U.S. DEPARTMENT OF
HOMELAND SECURITY et al.,

        Respondents.
_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the Calhoun County Jail in Battle Creek, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Am. Pet., ECF No. 3).[1] For the following reasons, the Court will grant Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### Discussion

### I.    Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of her current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Am. Pet., ECF No. 3, PageID.28–29).

---

[1] Petitioner initiated this action by filing a redacted § 2241 petition. (Pet., ECF No. 1.) After filing her first § 2241 petition, Petitioner filed an unredacted version of the petition. (Am. Pet., ECF No. 3.)

In an order entered on December 18, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on December 23, 2025, (ECF No. 5), and Petitioner filed her reply on December 24, 2025, (ECF No. 6). Thereafter, on January 7, 2026, Respondents filed a motion to file a supplemental declaration (ECF No. 7), and Petitioner filed a response to the motion on January 8, 2026. (ECF No. 8). The Court granted Respondents' motion to file a supplemental declaration. The Court requested additional supplemental information from Respondents on February 9, 2026, (ECF No. 9), and Respondents timely filed a supplement with an attached declaration on March 11, 2026, (ECF No. 10).

II.     Relevant Factual Background

Petitioner is a native and citizen of Mauritania who "was last admitted to the United States on January 2, 2000, as a non-immigrant B-2 visitor for pleasure through John F. Kennedy International Airport in New York, New York." (Am. Pet., ECF No. 3, PageID.22). Petitioner's non-immigration B-2 visitor for pleasure visa was valid until January 10, 2000. (*Id.*). On October 23, 2000, Petitioner applied for asylum, and her case was referred to the Immigration Court for removal proceedings on December 27, 2000. (*Id.*). "On January 3, 2001, the Immigration and Naturalization Service (INS) filed a Notice to Appear (NTA) with the Immigration Court in Detroit, Michigan, alleging that Petitioner was removable under . . . § 212(a)(6)(A)(i)" of the Immigration and Nationality Act (INA) as an immigrant present in the United States without being lawfully admitted or paroled. (*Id.*, PageID.22–23 (internal quotation marks omitted)).

On March 21, 2001, an "Immigration Judge denied Petitioner's applications for asylum, withholding of removal, and voluntary departure." (*Id.*, PageID.23). Petitioner filed an appeal to the Board of Immigration Appeals (BIA). (*Id.*) The BIA affirmed the Immigration Judge's order of removal in March 2003,[2] and Petitioner's order of removal became final at that time. (Szukhent Decl. ¶ 7, ECF No. 5-1, PageID.47). Petitioner was not removed from the United States at that time. (*See id.* ¶¶ 8–9).

On November 22, 2006, ICE took Petitioner into custody for approximately one week, and she was then released on November 28, 2006, on a $5,000 bond. (*Id.* ¶ 9). Nearly eleven years later, on October 18, 2017, ICE placed Petitioner "on Alternatives to Detention (ATD)." (*Id.* ¶ 10). On June 4, 2025, Petitioner reported to ICE for a scheduled ATD check-in, and at that time, ICE took Petitioner into custody due to her final order of removal. (*Id.* ¶ 14, PageID.48).

On September 3, 2025, ICE "conducted a post-order custody review" and issued Petitioner "a Decision to Continue Detention based upon a significant likelihood of removal." (*Id.* ¶ 15). Thereafter, on December 7, 2025, ICE conducted another "post-order custody review" and issued another "Decision to Continue Detention based upon the receipt of a travel document and imminent scheduling of removal." (*Id.* ¶ 16). Petitioner was scheduled for removal to Mauritania on January 2, 2026. (*Id.* ¶ 17). On January 2, 2026, Petitioner was not removed to Mauritania, and "the airline informed ICE that it was requiring additional identification documents." (Cooper Decl. ¶ 19, ECF No. 7-1, PageID.74). The

---

[2] In the amended petition, Petitioner states that the BIA affirmed the Immigration Court's order of removal in March 2001. (Am. Pet., ECF No. 3, PageID.21.)

document ICE offered the airline was "Form I-269, Certificate of Identity." (*Id.*). ICE, at that point, claimed to be in the process of "working with the Mauritania Embassy to obtain all necessary documents for [Petitioner's] removal." (*Id.* ¶ 20).

ICE never clarified what the efforts at "working with the Mauritania Embassy" were. Apparently, they were for naught. "The government of Mauritania has not responded, agreed to provide travel documents or provided a statement on whether [Petitioner] is a citizen of Mauritania." (ECF No. 10-1 at PageID.89 ¶ 21). Despite this, ICE prepared another Form I-269, (*id.* at PageID.88 ¶ 19), and prepared another letter to Petitioner indicating that her "removal is imminent and is expected to occur in the month of March, 2026," (*id.* ¶ 20).

Petitioner is married to a United States citizen, and "[t]ogether they have four (4) United States citizen children." (Am. Pet., ECF No. 1, PageID.23–24). Petitioner reports that she "has fully cooperated with all efforts to secure her removal" and "has made multiple trips to the Mauritanian Consulate in Washington, D.C." (*Id.*, PageID.24). Petitioner further reports that "staff at the Mauritanian Consulate in Washington, D.C.," have indicated that "the Mauritanian government has taken the position that it has no record of Petitioner's Mauritanian citizenship." (*Id.*, PageID.24–25).

### III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes

challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV. Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, PageID.25–28; Resp., ECF No. 5, PageID.41–42). However, Petitioner contends that her detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.27–28). In response, Respondents argue that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 5, PageID.40).

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in March of 2001 or 2003. Using either date, the 90-day removal period following the final order of removal expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides

5

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[3] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was taken into custody by ICE on June 4, 2025, and as of December 4, 2025, Petitioner had been in custody for six months. Petitioner argues that there is a "good reason to believe" that no significant likelihood of removal exists because she has had a final order of removal since 2001 or 2003 and has not been removed, and Respondents continue to be unable to remove Petitioner, as demonstrated by Respondents' inability to remove Petitioner on January 2, 2026, due to the lack of required identification documents. (*See* Reply, ECF No. 8; Am. Pet., ECF No. 3). Respondents assert that following the failed attempt to remove Petitioner on January 2, 2026, due to the lack of identification documents, ICE is in the process of "working with the Mauritania Embassy to obtain all necessary documents for [Petitioner's] removal." (Cooper Decl. ¶ 20, ECF No. 7-1, PageID.74).

Those efforts have apparently achieved little since, despite the concession that those documents are "necessary." (*Id.*). "The government of Mauritania has not responded," nor has it provided travel documents or even commented on whether Petitioner is a citizen. (ECF No. 10-1 at PageID.89 ¶ 21). The present justification for Respondent's position that

---

[3] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

removal will occur in the near future is that ICE is preparing another Form I-269, (*id.* at PageID.88 ¶ 19), but this is the precise form of identification rejected in the last attempt at removal, (ECF No. 7-1 at PageID.74 ¶ 19). Respondents have not provided any reason to believe the next attempt will be any different.

The government has been unsuccessfully attempting to remove Petitioner to Mauritania for over twenty years. It was recently unable to provide a travel document to a commercial airline in order to effect such a removal. Its efforts at working with the Mauritanians have achieved nothing, and there is no indication that will change. The only plan in place to effectuate removal is to repeat the attempt to use the form of identification that was previously rejected. These facts, alongside Petitioner's evidence that Mauritania will not provide travel documents or recognize her as a citizen, (*see* ECF No. 3 at PageID.24-25 ¶ 31), provide good reason to believe that "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701. Because Petitioner has met her burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.*

The evidence Respondents offer undermines, rather than supports, their position. They have demonstrated that after several months the Mauritanian government has not responded with necessary travel documents. The only purported plan to effectuate Petitioner's removal is to repeat the same failed plan from January. Respondents cite *Habibullah v. Lynch*, EP-16-CV-00150-DCG, 2016 WL 8674380, at *4 (W.D. Tex. Aug. 31, 2016), to argue that the evidence they have offered is sufficient to rebut Petitioner's evidence. But in *Habibullah*, there was record evidence that the Certificate of Identity had been used "in lieu of official travel documents to repatriate individuals in similar

7

circumstances." *Id.* Not only is there no similar evidence in the record here, there is evidence that Form I-269 is *insufficient* to effectuate removal from the failed removal attempt in January. Respondent has not provided any evidence that this situation will change. Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's amended § 2241 petition.

## V.     Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director and Acting Director, and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the U.S. Department of Homeland Security and the Attorney General of the United States as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 3.) The Court will order Respondents to release Petitioner from detention, subject to any conditions that existed prior to Petitioner's present detention. The Court will also order Respondents to file a status report within five days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will dismiss the U.S. Department of Homeland Security and the Attorney General of the United States as Respondents.

Dated:   March 16, 2026                               /s/ Paul L. Maloney
                                                                                 Paul L. Maloney
                                                                                 United States District Judge